# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENIA BROWN,<br><br>        Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | Case No. 1:17-cv-00950-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 12, 13, 19) |

## I.

## INTRODUCTION

Plaintiff Eugenia Brown ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for a period of disability and disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from advanced chronic obstructive pulmonary disease ("COPD") (primarily chronic bronchitis), asthma, tobacco use disorder, lumbar spine degenerative disc disease with lumbar spinal stenosis, facet arthropathy, and obesity. For the reasons set forth below, Plaintiff's motion for summary judgment shall be denied and Defendant's motion for summary judgment shall be granted.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 4, 5.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II, alleging disability beginning March 1, 2011.  (AR 218-226.) Plaintiff's application was initially denied on January 2, 2014, and on reconsideration on April 14, 2014.  (AR 121-153.)  Plaintiff requested and received a hearing before Administrative Law Judge Cynthia Floyd ("the ALJ").  Plaintiff appeared for a hearing on January 13, 2016.  (AR 81-120.) On March 25, 2016, the ALJ found that Plaintiff was not disabled.  (AR 46-60.)  The Appeals Council denied Plaintiff's request for review on May 25, 2017.  (AR 6-10.)

**A.     Relevant Hearing Testimony**

Plaintiff testified at the hearing on January 13, 2016.  She lives with her husband and adult daughter in a single-story house.  (AR 85.)  She has two dogs and a cat.  (AR 85.)  She does not drive, so her husband and daughter help her get around the home.  (AR 87.)  She surrendered her license after it was suspended for not going to traffic school after she ran a stop sign.  (AR 86-87.) She has a GED and she earned a certificate as a medical assistant.  (AR 87-88.)

She last worked in March 2011 for Ameritas Corporation in a community relations position at an assisted living community.  (AR 88.)  She was laid off because she was not able to get enough people to move into the building.  (AR 90-91.)  She was unable to handle the increased workflow. (AR 91.)

Her health has declined in the past 4 years.  (AR 92.)  Dr. Ying Luo is her treating doctor. (AR 92.)  She has horrible lower back pain that hurts when she walks and gets so bad that she can hardly breathe and she must sit down.  (AR 92, 101.)  Laying down, taking medications, taking hot baths and showers, and taking it easy help relieve the pain.  (AR 92.)  She takes medications daily, including MS Contin, Hydrocodone, and Motrin, and also uses creams.  (AR 92.)  The pain medication causes her to be tired and she wants to lay down.  (AR 102.)  She started taking Morphine 4 to 5 years ago and it helps, but makes her tired.  (AR 93.)  She feels her pain level is a 9 or 10 before medication and a 2 or 3 after medication.  (AR 93-94.)  In November 2014, she had 8 injections in her facet joints which helped relieve some of the pain, but she was still in severe

pain. (AR 107-108.) The doctor wanted to do a procedure where they kill the nerves with electricity, but her insurance would not pay for that and she was scared to do it, but she may get it done in the future. (AR 108.)

She was diagnosed in June 2015 with COPD after she had chest pain. (AR 95, 102.) She has been to the emergency room one time in the past year for her breathing. (AR 102.) Her COPD flares up when it is extremely cold out and she gets a cold. (AR 95.) Also, the air in the summer causes it to flare up. (AR 95.) She has trouble walking short distances and bending because of her COPD. (AR 96-97.) She can walk a couple hundred feet and then she has to sit down because she becomes short of breath. (AR 97.) She keeps two inhalers with her and she has a nebulizer that she uses three times a day that helps. (AR 97.) She has also been getting steroid injections for years. (AR 97.)

She smokes a few cigarettes a day because of her nerves, but she has cut "way back" and she will quit smoking within a few months. (AR 95-96.) She wants medication to help her stop smoking, but the doctor will not prescribe it because of her blood pressure. (AR 95.)

She recently started taking Clonazepam for her anxiety and that helps her feel better, but she has some breathing issues and it makes her very tired. (AR 94-95.) She started experiencing anxiety in 2010 when her daughter lost her baby and then she has anxiety from losing two good friends. (AR 94-95.) She has never been to psychotherapy and she does not know why she has not been. (AR 95.)

She had carpal tunnel release surgery on her right hand in 1991 or 1992 and she still has issues with her hands. (AR 103.) She has arthritis in her hands, and specifically, her thumbs. (AR 103.) She frequently drops things with both hands. (AR 103.) However, she has not mentioned this to her doctor. (AR 103.)

During a typical day, she wakes up around 6:30 a.m. and then she lays down and goes back to sleep between 7:30 a.m. and 8 a.m. after her husband leaves for work. (AR 98-99.) She gets up about 10 a.m. to let the dogs out and then lays back down until about 1 or 2 p.m. (AR 99.) She then gets up when her husband gets home around 5 or 6 p.m. (AR 99.) She goes to sleep about 9 or 10 p.m. (AR 99.) She takes frequent naps because she has trouble sleeping. (AR 101-102, 105.)

3

She goes to the living room to sleep because her breathing has been bad. (AR 102.)

She has a cup of coffee in the morning. (AR 99.) She tries to take showers regularly, but she does not want to do anything. (AR 99.) She has a pressure cooker, so she throws food in it. (AR 100.) Her daughter does a lot of the cooking, but she helps her daughter cook. (AR 100.) Plaintiff sits at the table and peels potatoes. (AR 100.) She makes sure the dishes are done and things in the living room are picked up before her husband gets home. (AR 100.) She can wash a few dishes at a time. (AR 100.) She cannot scrub the bathtubs because she cannot bend over and scrub. (AR 100.) She can feed the dogs and let them out to go to the bathroom. (AR 106.) Her daughter does a lot of the housework and picks up after the dogs. (AR 104, 106.)

She is not sure what she enjoys spending time doing. (AR 100.) She does not go out to eat or go to the movies. (AR 101.) She does not do anything. (AR 101.) However, she goes to Walmart on the weekends and she goes to doctors' appointments. (AR 87.)

She is more comfortable doing things seated. (AR 103-104.) She has a hard time walking around without leaning on anything. (AR 104.) She can pick a pen up off the ground, but she has to position herself to do it and it hurts. (AR 105.) She cannot crouch, crawl, or stoop. (AR 105.) She can only lift 10 to 20 lbs. due to her back pain, but she does not know how far she could carry it without dropping it. (AR 98, 102-103.) She has no issues reaching overhead.[2] (AR 105-106.)

She has not been placed on any kind of dietary restrictions. (AR 107.) She has been diagnosed as prediabetic because her blood sugar is high. (AR 107.) She tests her blood sugar. (AR 107.) Her doctor told her that the steroids cause her blood sugar to be very high. (AR 107.) Her doctor told her that she will have more bloodwork and receive diabetic medication once the steroids are out of her system. (AR 107.)

A vocational expert ("VE"), Cheryl Chandler, also testified at the hearing. (AR 112-118.) The VE testified that an individual with the same vocational profile as Plaintiff and the same RFC that the ALJ gave Plaintiff could not perform Plaintiff's past work, but could perform other work. (AR 117.) This individual could be a marker, Dictionary of Occupational Titles ("DOT") #

---

[2] The ALJ noted that Plaintiff lifted her right arm above shoulder level with no difficulty. (AR 106.)

369.687-026, light, SVP 2, with 134,000 jobs nationally; garment sorter, DOT # 222.687-014, light, SVP 2, with 232,000 jobs nationally; and a garment bagger, DOT # 920.687-018, light, unskilled, SVP 1, with 323,000 jobs nationally. (AR 117.) The VE's testimony was consistent with the DOT. (AR 117.)

## B. ALJ Findings

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016.

- Plaintiff has not engaged in substantial gainful activity since March 1, 2011, the alleged onset date.

- Plaintiff has the following severe impairments: advanced COPD (primarily chronic bronchitis), asthma (not otherwise specified), tobacco use disorder, lumbar spine degenerative disc disease with lumbar spinal stenosis and facet arthropathy, and obesity.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- After careful consideration of the entire record, Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 CFR 404.1567(b) except Plaintiff would be able to lift and carry 20 lbs. occasionally and 10 lbs. frequently, stand and/or walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. She should never climb ladders, ropes, or scaffolds. She could frequently stoop, kneel, crouch, crawl, and balance. She should avoid concentrated exposure to workplace hazards such as unprotected heights and fast moving/unprotected machinery and traversing on uneven terrain. She should avoid concentrated exposure to respiratory irritants, such as fumes, odors, dusts, gases, poor ventilation, and extreme cold/heat.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on September 8, 1962, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Plaintiff has subsequently changed age categories to closely approaching advanced age.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled" whether or not Plaintiff has transferable job skills.

- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from March 1, 2011, through the date of the decision.

(AR 49-60.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in (1) evaluating the opinions of her treating physician, Dr. Luo; (2) discrediting her and finding that she has failed to comply with treatment; (3) the evaluation of her mental impairments; (4) failing to discuss Plaintiff's ability to grip because of her arthritis; (5) failing to address her impairments in combination; (6) finding an RFC that is legal error and not supported by substantial evidence; and (7) rendering a step five finding that is not supported by substantial evidence.

Defendant counters that the ALJ's decision is free of legal error and substantial evidence supports the ALJ's decision.

Plaintiff replies that the Court should not consider Defendant's post hac reasons. Plaintiff asserts that the ALJ did not explain why Plaintiff can perform light work when her treating physician and the medical record establish that she has COPD. She contends that the ALJ found that she can do less than light work and the ALJ did not explain how Plaintiff could perform sedentary work. She argues that Defendant does not provide any authority which would allow the ALJ to skip the special procedures required under 20 C.F.R. § 404.1520a(b).

### A. The ALJ Did Not Err in Her Evaluation of Dr. Luo's Opinions

First, the Court discusses whether the ALJ erred in her evaluation of Dr. Luo's June 2013 and December 2015 opinions. The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). A treating physician's opinion is entitled to controlling weight on the issue of the nature and severity of the claimant's impairment where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c).

"If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.' " Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2). "In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician." Orn, 495 F.3d at 632. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Orn, 495 F.3d at 631).

If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayless v. Barnhart,

427 F.3d 1121, 1216 (9th Cir. 2005)).  Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict.  Andrews, 53 F.3d at 1041.  However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record.  Id.

The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.  Thomas, 278 F.3d at 957.  It is the ALJ's responsibility to consider inconsistencies in a physician opinion and resolve any ambiguity.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999).  The ALJ can meet her "burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 779 F.2d 1403, 1408 (9th Cir. 1989)).

Here, Plaintiff argues that the ALJ did not provide adequate reasons supported by substantial evidence for the weight given to Dr. Luo's opinions.  While Plaintiff asserts that Dr. Luo's opinions are uncontroverted, Dr. Samuel Rush, the physical consultative examiner, contradicts Dr. Luo's opinions regarding Plaintiff's functional limitations.  In addition, the opinions of the state agency reviewing physicians contradict Dr. Luo's opinions.  Therefore, Dr. Luo's opinions are contradicted and the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to discount Dr. Luo's opinions.  Most of Plaintiff's arguments regarding Dr. Luo's opinions are general statements that the ALJ did not meet the standard for evaluating Dr. Luo's opinions.  Therefore, the Court first discusses whether Plaintiff has waived a challenge to the specific findings regarding Dr. Luo's opinions.

       1.    <u>Plaintiff Waived a Challenge to Most of the Specific Findings Regarding Dr. Luo's Opinions</u>

Plaintiff did not specifically address in her opening brief any of the reasons provided by the ALJ for rejecting Dr. Luo's opinions.  She only states that the ALJ does not provide clear and

convincing reasons supported by substantial evidence to reject Dr. Luo's entire evaluation. Defendant counters that the ALJ provided six specific and legitimate reasons for rejecting Dr. Luo's opinions.[3] Defendant also contends that Plaintiff has conceded that most of the reasons the ALJ provided were valid because Plaintiff did not address them in her opening brief. In her reply brief, Plaintiff does not respond to most of the reasons asserted by Defendant. The only argument Plaintiff makes in her reply brief regarding the weight given to Dr. Luo's opinions is that the ALJ should not have rejected Dr. Luo's opinions because they were on preprinted medical source statements. This is potentially a challenge to the ALJ's finding that Dr. Luo provided no basis or explanation for the four-day absences and the need for a low stress job.

Plaintiff has not properly challenged most of the reasons provided by the ALJ for the weight given to Dr. Luo's opinions, so Plaintiff has waived any challenge to the specific findings regarding Dr. Luo's opinions that she did not address in her briefs to this Court. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1007 (9th Cir. 2006). Therefore, the Court does not conduct an in-depth analysis of these other reasons.

The ALJ found:

As for the opinion evidence treating physician Dr. Ying Luo opined in June 2013 that the claimant would be absent more than four days per month. She could lift and carry 20 pounds rarely and 10 pounds occasionally stand and walk for zero to two hours in an 8-hour day and sit for zero to two hours in an 8-hour day. She would need a job that permitted shifting positions at will from sitting standing or walking. She could frequently twist and occasionally stoop crouch and climb ladders and stairs. She would frequently experience pain and other symptoms severe enough to interfere with her attention and concentration needed to perform even simple work tasks and she was capable of low stress jobs Exhibit 3F p. 2. The Administrative Law Judge gives some weight to the weight bearing of lifting and carrying of 10 and 20 pounds but no controlling weight is given. The Administrative Law Judge gives no weight to standing and walking for zero to two hours and little weight to the occasional postural activities because the MRI indicates mild lumbosacral degenerative disc disease and arthropathy with only mild stenosis. She has had no surgery or hospitalizations and uses no assistive devices. She engages in activities of daily living that exceed these restrictions i.e. laundry hanging clothes loading the dishwasher watering the backyard gardening/planting tomatoes and going shopping Exhibit 6E. Dr. Luo also provided no basis or explanation for the four-day absences and the need for a low stress job. The Administrative Law Judge gives no weight to the restriction of needing

---

[3] The Court notes that while Defendant asserts that the ALJ rejected Dr. Luo's opinions because Plaintiff failed to comply with her prescribed treatment, the ALJ did not provide this as a reason. The Court can only address the reasons provided by the ALJ because the Court cannot consider post hac reasons. See Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.")

to shift positions because the claimant sat comfortably throughout the hearing and did not shift positions. There is nothing in the treating notes by Dr. Luo supporting the need to shift positions.

Dr. Ying Luo opined in December 2015 that the claimant did not need an assistive device. She could lift and carry 10 pounds occasionally and 20 pounds rarely stand and walk for two hours in an 8-hour day and sit for two hours in an 8-hour day. She would need to shift positions at will from sitting standing and walking and could frequently twist and occasionally stoop crouch and climb ladders and stairs. She would occasionally experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks. Moderate stress was okay and her mild anxiety and depression were stable on current medications Exhibit 13F p. 4. This Medical Source Statement states the same restrictions as Exhibit 3 F from June 2013 except Dr. Luo now indicates moderate stress is okay and the claimant would only be absent one day a month. This opinion is not given controlling weight and little weight is given to the standing walking sitting and postural restrictions and the need to shift positions because the MRI indicates mild lumbosacral degenerative disc disease and arthropathy with only mild stenosis. She has had no surgery or hospitalizations and uses no assistive devices. She engages in activities of daily living that exceed these restrictions. The claimant sat comfortably throughout the hearing and did not shift positions. There is nothing in the treating notes by Dr. Luo supporting the need to shift positions. Thus, the opinion is not well-supported by these clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence such as the other medical opinions and conservative course of treatment.

(AR 56.)

As discussed by the ALJ, Dr. Luo gave the same exertional limitations and postural limitations in the December 2015 medical source statement as the June 2013 opinion. (AR 56, 383-385, 957-960.) The only difference with the December 2015 opinion is that the December 2015 opinion indicates that moderate stress is okay and that Plaintiff would only be absent one day a month. (AR 56.)

The ALJ found that Dr. Luo's opinions are not supported by the clinical and laboratory diagnostic techniques and are inconsistent with other substantial evidence. (AR 56.) The ALJ summarized the clinical evidence and x-rays. (AR 54-56.) Among the evidence that the ALJ set forth, she discussed that Plaintiff had full range of motion in her back and there was no palpable spasm or pain on motion during examinations on January 29, 2009, and May 27, 2009, and there was also no joint tenderness, deformity, or swelling on January 29, 2009. (AR 54, 337, 354.) The February 22, 2014 MRI of the lumbar spine reveals mild bulging of the L4-5 and L5-S1 intervertebral discs and bilateral lower lumbar facet degenerative changes and hypertrophy at L3-4, L4-5, and L5-S1 producing mild narrowing of the neural foramina and mild lateral canal spinal

stenosis. (AR 55, 946.) During the December 2013 physical consultative examination with Dr. Samuel Rush, Plaintiff could move around the office without assistance, she had normal range of motion in her joints, she had a negative straight leg raising test, and she had 5/5 motor strength in her upper and lower extremities with normal muscle bulk and tone. (AR 55, 501-503.) She also had normal handgrip strength bilaterally. (AR 55, 503.)

The ALJ determined that Dr. Luo's opinions are inconsistent with the conservative course of treatment Plaintiff has received. (AR 56.) The ALJ pointed out that Plaintiff has had no surgery or hospitalizations and does not use any assistive devices. (AR 56.) In fact, the ALJ pointed out that Dr. Luo opined in December 2015 that Plaintiff did not need an assistive device. (AR 56.) In Plaintiff's July 30, 2013 disability report, she does not indicate any hospital stays. (AR 244.) When Plaintiff was admitted to the hospital on April 20, 2016 for breathing issues, it was noted in a discussion of Plaintiff's COPD/asthma history that she has not been admitted to the hospital before. (AR 35.) However, she did receive facet joint injections in her lower back in November 2014 and the doctor requested approval for her to receive a radiofrequency ablation procedure. (AR 107, 300, 815, 824.)

The ALJ also discounted Dr. Luo's opinions based on Plaintiff's daily activities. (AR 56.) The ALJ identified laundry, hanging clothes, loading the dishwasher, watering the backyard, gardening/planting tomatoes, and going shopping. (AR 56.) The ALJ cited to Plaintiff's function report. (AR 266-273.) In Plaintiff's function report, she stated that for 1 hour a day she does laundry, hangs clothing, loads the dishwasher, and waters the backyard. (AR 268.) She does need help with watering the yard and vegetables. (AR 268.) She mentioned that she planted tomatoes, but they died. (AR 268.) She did state that she cannot pull weeds because her hand would swell up and her back hurts more and will stiffen up when she bends over. (AR 269.) She also stated that she goes to Walmart with her husband every Saturday for 2 hours. (AR 269.)

The ALJ considered that her observations of Plaintiff during the hearing were inconsistent with Dr. Luo's opinions that Plaintiff needed to shift positions. (AR 56.) The ALJ found that Plaintiff sat comfortably throughout the hearing and did not shift positions. (AR 56.)

The ALJ also found that Dr. Luo's opinions are inconsistent with the other medical opinions.

(AR 56.)  The ALJ gave no weight to the opinion of Dr. Rush, who found no restrictions.  (AR 56-57.)  The agency reviewing physicians found that Plaintiff could lift and carry 50 lbs occasionally and 25 lbs frequently, could stand and/or walk for 6 hours in an 8-hour day, could sit for 6 hours in an 8-hour day, could never climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to hazardous machinery and heights.  (AR 57.)  The ALJ gave the agency reviewing physicians' opinions great weight except for the exertional limitations, because the subsequent MRI and COPD diagnosis support a greater restriction than given by the agency reviewing physicians.  (AR 57.)  While the contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating physician's opinion, "it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan, 242 F.3d at 1149.

2.    Opinions Were Preprinted on Medical Source Statements

Plaintiff asserts in her reply that "[a]lthough the Commissioner argues Dr. Luo's testimony is given less weight because it was preprinted on medical source statements, the ALJ did not make this determination (Comm'r Br. 3).  Revels v. Berryhill 874 F3 648 (9th Cir. 2017) states a physician's evaluation is not diminished in value because it includes check boxes."  [sic].  (ECF No. 19 at 5.)[4]  Contrary to Plaintiff's assertion, Defendant did not assert that the ALJ rejected Dr. Luo's opinions because they were on pre-printed forms.  Defendant only stated that Dr. Luo completed two pre-printed medical source statement forms as a fact about Dr. Luo's opinions.  (ECF No. 13 at 3, 7.)  The only reason provided by the ALJ that could possibly relate to Plaintiff's argument is that Dr. Luo provided no basis or explanation for the four-day absences and the need for a low stress job.  (AR 56, 383-385.)

Dr. Luo's June 2013 opinion includes no explanation or bases for these limitations.  (AR 383-385.)  The only diagnosis listed for the June 2013 opinion is chronic severe lower back pain and the only symptom listed is severe lower back pain radiating to both legs.  (AR 383.)  The only clinical findings and objective signs listed are tenderness in the lower back area.  (AR 383.)  While

---

[4] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

13

Dr. Luo indicates that Plaintiff has depression affecting her physical condition, Dr. Luo does not provide an explanation for why Plaintiff is only capable of low stress jobs. (AR 385.) However, there are times in Dr. Luo's treatment notes that he indicates that Plaintiff's affect looks anxious and/or depressed. (AR 386, 390-391, 451, 480.) There are other times where Plaintiff has a normal affect and is not in distress. (AR 421, 433, 439, 446, 457, 464, 469, 475, 517, 530.)

Even to the extent that it was error for the ALJ to use this reason to discount Dr. Luo's opinions, any error is harmless because the ALJ provided other specific and legitimate reasons supported by substantial evidence for discounting Dr. Luo's opinions. The ALJ's decision will not be reversed for errors that are harmless. Burch, 400 F.3d at 679; Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

**B.    Plaintiff's Credibility**

Plaintiff asserts in the context of her credit as true argument that the ALJ cannot reject her testimony about the severity of her symptoms without offering specific, clear, and convincing reasons. (ECF No. 12 at 24-25.) Plaintiff contends in another section of her opening brief that the ALJ erred in finding that she failed to comply with treatment. (ECF No. 12 at 16-19.) While Plaintiff does not specifically address this argument in the context of her credibility, this finding was given by the ALJ as one of the reasons for discrediting Plaintiff.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina, 674 F.3d at 1112. The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only

by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

      1.     Plaintiff Waived a Challenge to Most of the Specific Credibility Findings

In determining the credibility of Plaintiff's symptom testimony, the ALJ considered:

> The claimant has alleged that she cannot work due to anxiety, arthritis, degenerative disc disease, sciatica, and asthma (Exhibits 1A; 3A; 2E). The claimant stated that her conditions became more severe since February 2013. She alleged that she was unable to stand for more than 15 minutes before repositioning herself due to the severe pain, discomfort, and shortness of breath. She got no more than four to five hours of sleep per night on average, and even those hours were interrupted every two hours. She stated she was weaker overall (Exhibits 8E; 10E). She stated that she napped once a day for two to three hours. She had pain in her low back, leg, and knees, described as throbbing, and aggravated by walking, sitting, lifting, standing, and laying on her back. She could stand and walk for five to 10 minutes and sit for 20 minutes. She used a heating pad, hot bathes, ice packs and menthol rubs. Her medications made her sleepy. She did not get any relief from the TENS unit or injections (Exhibit 4E). The claimant reported that her low back pain radiated down to her left side, and her right leg had been aching. She had epidural injections that helped temporarily and physical therapy that did not help significantly (Exhibit 8F, p. 1).
>
> The claimant testified that she has low back pain so severe that she could hardly breathe for which she takes Ibuprofen, Norco, and Morphine. She stated she still smokes, and heat and cold aggravates her breathing. She stated she only walk 200

feet because having to sit down due to shortness of breath. She stated she could lift and carry 10 to 20 pounds. She stated she has been to the emergency room one time in June for breathing problems. She stated her medications made her sleepy and tired. The claimant stated she had carpal tunnel release in 1992 and frequently drops things, worse on the right. She said she cannot crouch, crawl, or stoop, but could reach and grasp overhead.

(AR 54.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the evidence for the reasons explained in this decision." (AR 57.)

The ALJ noted that while Plaintiff has had a long history of treatment for her impairments, her allegations are not supported by the clinical evidence. (AR 54.) The ALJ then summarized the clinical evidence and x-rays. (AR 54-56.) The ALJ also pointed out that during her consultative examination with Dr. Rush, Plaintiff had 100 percent range of motion of her lumbar spine, negative straight-leg raising test at 60 degrees bilaterally, reflexes were normal, and she walked normally. (AR 57, 501-503.) A determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Here, the ALJ provided other reasons in addition to the testimony being inconsistent with clinical evaluations.

The ALJ found that "[t]he record generally suggests that the claimant was seeing physicians primarily in order to generate evidence for this application and appeal, rather than in a genuine attempt to obtain relief from the allegedly disabling symptoms." (AR 57.) The ALJ pointed out that "[i]n June 2013, [Plaintiff] requested a disability paper to be filed out (Exhibits 4F, p. 95; 10F, p. 1; 12F, p. 102).

The ALJ also found that Plaintiff's lumbar facet joint pain was controlled with medications

in June 2015. (AR 57, 886.) Medical improvement from treatment supports an adverse inference as to the credibility of a claim of ongoing disability. Morgan v. Comm'r of Soc. Sec, 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). Impairments that can be adequately controlled with treatment, including medication, are not disabling. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

In addition, the ALJ considered that Plaintiff has described daily activities that are not limited to the extent one would expect given her complaints. (AR 57.) The ALJ then detailed Plaintiff's daily activities including the statements she made to medical providers about her daily activities. (AR 57-58.) The ALJ gave great weight to Plaintiff's fairly wide range of daily activities, but little weight to the affected areas comments. (AR 58.)

Although Plaintiff argues that the ALJ made insufficient credibility findings, the only specific finding made by the ALJ that she challenges is the failure to comply with treatment. Therefore, Plaintiff has waived any challenge to the other specific credibility findings by failing to raise them in her opening brief as well as her reply brief. Warre, 439 F.3d at 1007.

2.  Any Alleged Error in Finding that Plaintiff Failed to Comply with Treatment Would be Harmless

Plaintiff argues that the ALJ erred in finding that she failed to comply with her treatment. She asserts that she complied with her weight loss program, anti-smoking treatment, and medication. Defendant addressed the failure to comply with treatment in the discussion of the weight given to Dr. Luo's opinions. Defendant asserts that Plaintiff did not heed Dr. Luo's recommendations that she stop smoking due to asthma, that she lose weight, and that she wean herself off narcotic medication. In reply, Plaintiff asserts that the evidence shows that she worked very hard with her chronic pain to maintain her weight and that her impairments have caused her obesity instead of vice versa. She also asserts that she has worked to be clean and sober.

The ALJ may base an adverse credibility finding on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Molina, 674 F.3d at 1113.

Even to the extent that it was error for the ALJ to use this reason to discredit Plaintiff, any

error is harmless because the ALJ provided other clear and convincing reasons supported by substantial evidence for discrediting Plaintiff. The ALJ's decision will not be reversed for errors that are harmless. Burch, 400 F.3d at 679; Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

### C. Evaluation of Plaintiff's Mental Impairments

Plaintiff challenges the ALJ's evaluation of her mental impairments. She asserts that she has a colorable claim of mental illness and the ALJ ignored that she was not leaving the house and that she was having mood swings.[5] Plaintiff also argues that the ALJ failed to follow the "special technique" required under 20 C.F.R. § 404.1520a(b).[6]

Defendant counters that the ALJ properly conducted the "special technique" set forth at 20 C.F.R. § 404.1520a for the four functional areas and properly evaluated her mental impairments. Defendant contends that because Plaintiff does not address the ALJ's explicit findings regarding the mental-status examinations, and the opinions of Dr. Michael Cohn, Dr. Christal Janssen, and Dr. Sandip Sen, Plaintiff concedes that they were valid.

In her reply brief, Plaintiff asserts that "[t]he Commissioner contends the ALJ did not need to address Brown's mental limitations. However, she does not provide any authority which allows the ALJ to skip this process." (ECF No. 19 at 6.) It is unclear what Plaintiff is referring to, since Defendant asserted that the ALJ considered Plaintiff's anxiety and depression and did conduct the "special technique" for mental impairments.

#### 1. Consideration of Plaintiff's Mental Health Impairments

Contrary to Plaintiff's assertions, the ALJ did discuss Plaintiff's mental health impairments. At step two, the ALJ stated that "[t]he claimant's medically determinable mental impairments of anxiety disorder and depression, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (AR 52.) The ALJ then discussed Plaintiff's consultative examination with Dr. Cohn

---

[5] Plaintiff states she was diagnosed with psychiatric illness when she was admitted to the hospital in March 2016. The Court notes that while history of psychiatric illness is included in the discharge diagnoses for her April 2016 hospitalization, she was admitted for an acute exacerbation of her COPD. (AR 34-36, 43.)
[6] Plaintiff also references 20 C.F.R. § 416.920a(b), but that section is for claims for Supplemental Security Income ("SSI"). Here, Plaintiff did not file a claim for SSI. Therefore, the Court only refers to Section 404.1520a(b).

in December 2013. (AR 52, 494-498.) The ALJ mentioned that Dr. Cohn found no evidence of depression or other psychiatric illness and provided no Axis I, II, or III diagnoses and rated her global assessment of functioning ("GAF score") at 82. (AR 52, 497.) The ALJ found that Dr. Cohn's opinion is consistent with his normal evaluation. (AR 52.) The ALJ also discussed Dr. Luo's report that Plaintiff had anxiety and depression and mild symptoms that would impair her ability to perform activities of daily living, maintain social functioning, and maintain concentration, persistence, or pace. (AR 52, 964-965.) Dr. Luo also found that Plaintiff would miss one day per month. (AR 52, 965.) The ALJ gave some weight to this opinion from Dr. Luo. (AR 52.) The ALJ also considered and agreed with the state agency psychological consultants, Dr. Janssen and Dr. Sen, who opined that Plaintiff did not have any severe mental impairments. (AR 52, 129-130, 145-146.)

In determining the effect of Plaintiff's anxiety and depression, the ALJ discussed Dr. Cohn's consultative examination findings, Dr. Cohn's opinion, Dr. Luo's opinion, and the state agency reviewing psychological consultants' opinion. Although Plaintiff testified that she has depression and anxiety, the ALJ properly discredited Plaintiff, as discussed above. Even Plaintiff's treating physician, Dr. Luo, only found that she had mild impairment in activities of daily living, social functioning, and maintaining concentration, persistence, or pace. (AR 52, 964-965.) While Dr. Luo found in December 2013 that she would be likely to miss more than four days a month and in December 2015 that she would be likely to miss one day a month, the ALJ provided reasons for the weight given to Dr. Luo's opinions, as discussed above. (AR 385, 965.) Therefore, the ALJ did consider the effect of Plaintiff's anxiety and depression, the opinions concerning Plaintiff's mental health, and Plaintiff's testimony concerning her mental health.

2.   Special Technique at Step Two for Mental Impairments

Plaintiff also argues that the ALJ did not properly apply the special technique for mental impairments. At the step two inquiry, the ALJ is to determine whether the plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). As relevant to this

social security appeal, basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," for example: "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.' " Smolen, 80 F.3d at 1290 (quoting Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)).

The ALJ must determine whether an applicant has a medically determinable mental impairment, 20 C.F.R. § 404.1520a(b)(1), rate the degree of functional limitation for four functional areas, 20 C.F.R. § 404.1520a(b)(2), and determine the severity of the mental impairment (in part based on the degree of functional limitation), 20 C.F.R. § 404.1520a(d). The ALJ's decision must include a specific finding as to the degree of limitation in each of the functional areas. 20 C.F.R. § 404.1520a(e)(4). The four functional areas are daily activities, social functioning, concentration, persistence, or pace, and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). If the degree of limitation in the first three functional areas is none or mild and the fourth functional area is none, the impairment is generally considered not severe unless the evidence indicates that there is more than a minimal limitation in your ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

After discussing Dr. Cohn's consultative examination findings, Dr. Cohn's opinion, Dr. Luo's opinion, and opinions of Dr. Janssen and Dr. Sen, the ALJ discussed the four broad functional areas. (AR 52-53.) The ALJ stated that she considered the four functional areas known as the "paragraph B" criteria. (AR 52.) She then stated:

> As discussed more fully below, the first functional area is activities of daily living. In this area, the claimant has mild limitation. The next functional area is social functioning. In this area, the claimant has no limitation. The third functional area is concentration, persistence, or pace. In this area, the claimant has mild limitation. The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.

(AR 52.)

As the ALJ pointed out, Dr. Luo, Plaintiff's treating physician, found that she had mild symptoms that would impair her ability to perform activities of daily living, maintain social

functioning, and maintain concentration, persistence, or pace. (AR 52, 964-965.) The ALJ pointed out that Dr. Luo's opinion would not preclude substantial gainful activity. (AR 52.) The ALJ adopted Dr. Luo's opinion that Plaintiff only had mild limitations in activities of daily living and concentration, persistence, or pace. (AR 964-965.) There is no evidence of any episodes of decompensation in the record as there is no evidence that Plaintiff has required extended inpatient care for psychiatric symptoms.[7] In fact, Dr. Luo stated that Plaintiff has not experienced episodes of decompensation. (AR 965.) While the ALJ found that Plaintiff has no limitation in social functioning, even if the ALJ had adopted Dr. Luo's opinion that Plaintiff had mild limitation in social functioning, the mental impairments would generally be considered not severe unless evidence indicates more than a minimal limitation in Plaintiff's ability to do basic work activities. See 20 C.F.R. § 404.1520a(d)(1).

Further, the ALJ considered Dr. Cohn's consultative examination findings, Dr. Cohn's opinion, and the state agency reviewing psychological consultants' opinions in finding that Plaintiff had no severe mental impairments singly and in combination. (AR 52.) Therefore, there is substantial evidence supporting the ALJ's functional area findings and the finding that Plaintiff has no severe mental impairments.

Accordingly, the Court finds that the ALJ did not err in evaluating Plaintiff's mental impairments.

**D.    Manipulative Limitations**

Plaintiff asserts that the ALJ did not consider her inability to grip and hold objects. Defendant points out that the only evidence of Plaintiff's manipulative limitations is her own testimony at the hearing. Defendant asserts that the ALJ properly found Plaintiff's claims were not credible and supported the RFC by relying on the physicians' opinions regarding manipulative limitations.

Dr. Luo, Plaintiff's treating physician, states that Plaintiff does not have significant limitations with reaching, handling, or fingering. (AR 958.) The other physician opinions in the record do not

---

[7] Under the listings, episodes of decompensation are defined as "exacerbations or temporary increase in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relations, or maintaining concentration, persistence, or pace." 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(C)(4).

find any manipulative limitations. As discussed above, the ALJ properly discredited Plaintiff's statements. Therefore, the ALJ did not err in finding that Plaintiff has no manipulative limitations.

### E. Combination of Impairments

Plaintiff asserts that the ALJ erred by not considering the effect of the combination of her impairments and that, in fact, the ALJ did not discuss most of her physical impairments. However, the ALJ properly considered the effect of the combination of her impairments. As Defendant points out, the ALJ considered at step three of the sequential analysis whether Plaintiff has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 53.) Further, the ALJ can meet her "burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." Magallanes, 881 F.2d at 751 (quoting Cotton, 779 F.2d at 1408). Review of the decision demonstrates that the ALJ considered the record as a whole, including all of Plaintiff's physical impairments, in conducting the sequential analysis and determining Plaintiff's residual functional capacity. (AR 51-58.) Therefore, the Court finds that the ALJ properly considered the combination of Plaintiff's impairments.

### F. Plaintiff's RFC

Plaintiff asserts that the RFC is error under SSR 83-10 because the ALJ found that Plaintiff can perform light work, but also that Plaintiff cannot perform light and medium work. The ALJ found that "[Plaintiff's] ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (AR 59.) SSR 83-10 provides that "the RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level (e.g., sedentary, light, or medium), but is also insufficient to allow substantial performance of work at greater exertional levels."

While some of Plaintiff's arguments stem from her belief that the ALJ found that she can only lift and carry less than 20 lbs. occasionally and 10 lbs. frequently, the ALJ never made this finding. Plaintiff points to the ALJ's finding when discussing the state agency reviewing physicians' opinions that "[t]he subsequent MRI and chronic obstructive pulmonary disease diagnosis (Exhibit 12F) support a greater restriction **of** lifting and carrying 20 lbs. occasionally and 10 lbs. frequently."

(AR 57) (emphasis added). Plaintiff reads this finding as a greater restriction **than** lifting and carrying 20 lbs. occasionally and 10 lbs. frequently. (ECF No. 12 at 13) (emphasis added). However, the ALJ found that the evidence supported a restriction to lifting and carrying 20 lbs. occasionally and 10 lbs. frequently, which was greater than the state agency reviewing physicians' opinions. (AR 57.)

In her reply, Plaintiff points to a different statement from the ALJ. The ALJ stated that "the claimant has the residual functional capacity to perform less than the full range of light work." (AR 53.) The ALJ then specified the lifting and carrying, standing and walking, and sitting limitations that Plaintiff can do. (AR 53.) The ALJ specifically stated in that sentence that Plaintiff would be able to lift and carry 20 lbs. occasionally and 10 lbs. frequently. (AR 53.) The ALJ then set forth postural and environmental limitations. (AR 53.) Therefore, when the ALJ stated that Plaintiff can do less than the full range of light work, she was referring to the fact that there are postural and environmental limitations that prevent Plaintiff from doing the full range of light work. It is clear that the ALJ determined that Plaintiff had the residual functional capacity to lift and carry 20 lbs. occasionally and 10 lbs. frequently.

Plaintiff argues that she can work neither light or sedentary jobs because Dr. Luo opined that Plaintiff cannot sit for more than 2 hours and she has no grip in her hands. However, as discussed above, the ALJ did not err in rejecting Dr. Luo's opinions. In addition, the Court notes that Dr. Luo did not opine any limitations regarding Plaintiff's grip. (AR 384.) Therefore, the ALJ did not have to include Dr. Luo's limitations in the RFC.

The ALJ found:

> In sum, the above residual functional capacity assessment is supported by the evidence as a whole. The claimant's subjective complaints are less than fully consistent with the evidence, and the objective medical evidence does not support the alleged severity of symptoms. The Administrative Law Judge finds that the claimant can do work subject to the residual functional capacity determined herein.

(AR 58.)

The ALJ evaluated Plaintiff's credibility, Plaintiff's husband's statement, the medical evidence in the record, and the doctors' opinions. (AR 51-58.) The ALJ gave great weight to the state agency reviewing physicians' opinions except for the amount of weight that Plaintiff could

lift and carry.  (AR 57.)  The ALJ found that Plaintiff could not lift and carry as much weight as the state agency reviewing physicians opined.  (AR 57.)  The ALJ considered that the MRI and the COPD diagnosis support a lifting and carrying restriction of 20 lbs occasionally and 10 lbs frequently.  (AR 57.)

In this case, the ALJ found that none of the opinions completely reflected Plaintiff's functional capacity as Dr. Luo's opinion was too restrictive, Dr. Rush's opinion found capacity beyond which Plaintiff retained, and the state agency reviewing physicians were accurate except for the lifting and carry limitations which were not restrictive enough.  This is not a situation where the ALJ rejected all the physician opinions and gave a less restrictive residual functional capacity.  The ALJ gave some credit to Plaintiff's subjective complaints and found that she could perform light work with some postural and environment limitations.  As discussed above, the ALJ properly evaluated Plaintiff's mental impairments.

Therefore, the Court finds that the ALJ did not commit legal error in rendering the RFC and there is substantial evidence to support the RFC that the ALJ found.

## G.      Step Five Finding

Plaintiff asserts the ALJ erred by rendering a step five finding that is not supported by substantial evidence because the jobs identified by the ALJ cannot be performed by an individual who cannot lift and carry 10 lbs. frequently and 20 lbs. occasionally.

At Step Five, the burden shifts to the Commissioner "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations."  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995); see also 20 C.F.R. § 404.1520(g).  At this step, the ALJ considers potential occupations that the claimant may be able to perform.  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015); see 20 C.F.R. § 404.1566.

In determining if a claimant is disabled, the ALJ can rely on the testimony of a vocational expert who testifies about specific occupations that a claimant is able to perform based on his residual functional capacity.  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); 20 C.F.R. § 404.1566(e).  The hypothetical question that is posed to the vocational expert must contain all the limitations that the ALJ found credible and supported by substantial evidence

in the record.  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  If the hypothetical question does not reflect all of the claimant's limitations then the vocational expert testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  The ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."  Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164–65 (9th Cir. 2001)).

Plaintiff contends that the VE did not identify any jobs that match the lifting and carrying limitations set forth by the ALJ.  Plaintiff asserts that the three jobs identified by the VE that the ALJ relied upon cannot be done by Plaintiff since she is unable to lift and carry 20 lbs. occasionally and 10 lbs. frequently for 6 hours a day.  However, the RFC found by the ALJ restricted Plaintiff to lifting and carrying 20 lbs. occasionally and 10 lbs. frequently.  (AR 53.)  As discussed above, when the ALJ addressed the state agency reviewing physicians' opinions, she found that Plaintiff could lift and carry 20 lbs. occasionally and 10 lbs. frequently.  (AR 57.)

During the hearing, the ALJ presented a hypothetical to the VE with the limitations that she included in the RFC and asked whether there would by any jobs that an individual with those limitations could perform.  (AR 117.)  The VE responded that the individual could be a marker, DOT # 369.687-026, light, SVP 2, with 134,000 jobs nationally; garment sorter, DOT # 222.687-014, light, SVP 2, with 232,000 jobs nationally; and a garment bagger, DOT # 920.687-018, light, unskilled, SVP 1, with 323,000 jobs nationally.  (AR 117.)

Therefore, the Court finds that ALJ did not err when she relied on the VE's testimony in finding that there were jobs in the national economy that Plaintiff was able to perform.[8]

/ / /

/ / /

/ / /

---

[8] Plaintiff also asserts that she is disabled under the medical-vocational guidelines if she can only perform sedentary work.  However, this argument is based on the erroneous assumption that both the ALJ's RFC determination and the VE's testimony are without substantial evidence in the record.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ properly evaluated the opinions of Dr. Luo, discredited Plaintiff's testimony, evaluated the mental impairments, considered the manipulative limitations, addressed the impairments in combination, rendered an RFC that is not legal error and that is supported by substantial evidence, and rendered a step five finding that is supported by substantial evidence.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Eugenia Brown. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **June 18, 2018**                                                                       

UNITED STATES MAGISTRATE JUDGE